# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA LIMON,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>ABM INDUSTRY GROUPS, LLC, a Delaware limited liability company,<br><br>　　　　　　　　　Defendant. | Case No.: 3:18-cv-00701<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING ACTION**<br><br>[Doc. No. 9] |

　　　　Plaintiff Maria Limon ("Plaintiff") brings this action against Defendant ABM Industry Groups, LLC ("Defendant") asserting seven causes of action arising from her employment with Defendant. Defendant moves to compel arbitration of Plaintiff's claims pursuant to the Federal Arbitration Act. *See* Doc. No. 9. Plaintiff filed an opposition to Defendant's motion, to which Defendant replied. *See* Doc. Nos. 12, 13. The Court found the matter suitable for decision without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, the Court **GRANTS** Defendant's motion to compel arbitration.

1

## BACKGROUND

On November 3, 2015, Plaintiff began working as a cleaner for Defendant's Janitorial Services division. That same day, Plaintiff initialed and signed a document entitled "Mutual Arbitration Agreement." Doc. No. 9-2, Ex. A. The Arbitration Agreement, a three-page document, provides in pertinent part:

> The Company and I agree as follows … Final and binding arbitration before a single, neutral arbitrator shall be the exclusive remedy for any "Covered Claim" … A "Covered Claim" is any claim (except a claim that by law is non-arbitrable) that arises between me and the Company, its past, present and future: parent(s), subsidiaries, affiliates, and/or their respective past, present and future: officers, directors and/or employees, including but not limited to claims arising and/or relating in any way to my hiring, my employment with, and/or the severance of my employment with, the Company.
>
> …
>
> Arbitration will occur in the county in the United States in which I reside at the time the claim is filed by any of the parties to this agreement reside. Arbitration will be conducted pursuant to the AAA Employment Arbitration Rules and Mediation Procedures (the "AAA Rules"), except as expressly set forth herein or where such rules are not in compliance with applicable state or federal law. A copy of the AAA rules is available for review through the Company by submitting a request to the Legal Department, by contacting AAA at telephone number 888-774-6904, or at AAA's website at www.adr.com.

*Id.* at 5.

On February 15, 2017, while working for Defendant, Plaintiff struck the side of her head on a counter. A few days later, after experiencing significant pain, Plaintiff went to the emergency room at Scripps Mercy hospital, where she was informed she injured her sciatic nerve. Due to her injury, Plaintiff was put on light work duty. As a result of being on light work duty, Plaintiff alleges she was mistreated by her employer, and was eventually terminated on March 6, 2018. This lawsuit ensued.

//

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court … for an order directing that … arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *See AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself … in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476-77 (1989).

In determining whether to compel a party to arbitration, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotations and citation omitted). If the Court finds that the answers to those questions are "yes," the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). If there is a genuine dispute of material fact as to any of these queries, a district court should apply a "standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC,* 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Court must apply ordinary state law principles in determining whether to invalidate an agreement to arbitrate. *See Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 782 (9th Cir. 2002). As such, arbitration agreements may be invalidated by generally

3

3:18-cv-00701

applicable contract defenses, such as fraud, duress, or unconscionability. *Concepcion*, 563 U.S. at 339-41.

## DISCUSSION

**A. <u>Evidentiary Objections</u>**

As a preliminary matter, Defendant objects to evidence submitted in support of Plaintiff's opposition, *see* Doc. Nos. 13-2, 13-3, including a copy of Defendant's offer to compromise with Plaintiff regarding this action, and portions of Plaintiff's declaration.

Defendant objects to the submission of its offer to compromise with Plaintiff on the grounds that it is irrelevant. *See* Doc. No. 13-3 at 2. The Court ultimately did not rely on the offer to compromise to reach its disposition. As such, this objection is moot.

Defendant also objects to Plaintiff's declaration on the grounds that, *inter alia*, her statements have not been properly authenticated. *See* Doc. No. 13-2, at 2-5. Defendant argues that the declaration lacks proper authentication of testimony translated from Spanish. Written translations must be properly authenticated. *See* Fed. R. Evid. 901(a). As such, "[w]itness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation done by a competent translator." *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 659 (N.D. Cal. 1994) (citing Fed. R. Evid. 604 & 901). Plaintiff's declaration is submitted without a translator's verification or sufficient indication that the testimony was accurately translated. The declaration is therefore not properly authenticated. *See Consejo de Desarrollo Economico de Mexicali, AC v. United States*, 438 F. Supp. 2d 1207, 1226 (D. Nev. 2006) (sustaining objection to declarations that appeared to have been written originally in Spanish and later translated into English, absent any indication that the English versions of the declarations were true and correct translations). Accordingly, the Court **SUSTAINS** Defendant's objection to Plaintiff's declaration.

**B. <u>Defendant's Motion to Compel</u>**

Defendant moves to compel arbitration, arguing that Plaintiff agreed to arbitrate all disputes arising out of her employment with ABM. In opposition, Plaintiff argues that

4

the Arbitration Agreement is procedurally and substantively unconscionable. Moreover, Plaintiff asserts that "the Arbitration Agreement does not allow for adequate discovery." Doc. No. 12 at 2. The Court addresses the parties' arguments in turn.

### 1. A Valid Agreement to Arbitrate Exists

The Court first considers whether there is a valid agreement to arbitrate between the parties. *See Cox*, 533 F.3d at 1119. A party moving to compel arbitration must prove the existence of a valid arbitration agreement by a preponderance of the evidence. *See Olvera v. El Pollo Loco, Inc.*, 93 Cal. Rptr. 3d 65, 71 (Cal. Ct. App. 2009). When determining the existence of valid arbitration agreements, "federal courts 'should apply ordinary state-law-principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, the Court finds that a valid agreement to arbitrate exists. Defendant presents the Arbitration Agreement, bearing the signature of "Maria Limon," as well was the initials "ML." *See* Doc. No. 9-2, Ex. A. Plaintiff does not dispute that she signed the Arbitration Agreement. Accordingly, the Court finds that Defendant has met its burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *See Owens v. Intertec Design, Inc.*, 38 Cal. App. 4th 72, 75 (Cal. Ct. App. 1995) (holding "the arbitration agreement must be enforced as a matter of law" where the plaintiff "presented no evidence, by declaration or otherwise, in support of the 'facts' underlying his arguments in opposition to the [motion to compel arbitration.]").

Second, the Court must consider whether the Arbitration Agreement encompasses Plaintiff's claims. *See Cox*, 553 F.3d at 1119. The Arbitration Agreement expressly provides that the Plaintiff agrees to "arbitrate claims between [Plaintiff and ABM]," "arising from and/or relating in any way to any aspect of my hiring, my employment and/or the severance of my employment." *See* Doc. No. 9-2, Ex. A at 2. All of Plaintiff's claims arise from her employment and termination of employment with

Defendant. Thus, the Arbitration Agreement's language clearly encompasses Plaintiff's employment-related claims against Defendant.

### 2. The Arbitration Agreement is Not Unconscionable

Plaintiff argues that even if a valid agreement to arbitrate exists, the Arbitration Agreement is procedurally and substantively unconscionable. *See* Doc. No. 12 at 2. Plaintiff asserts that the agreement is procedurally unconscionable because of its adhesive nature, and that it was provided in a language she does not understand, without an attachment of the AAA rules. *See id.* Additionally, Plaintiff contends that the Arbitration Agreement is substantively unconscionable because it contains a "PAGA waiver."[1] *See id.* at 7.

A contract defense of "unconscionability … may operate to invalidate arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The party asserting that an arbitration agreement is unconscionable bears the burden of proof. *See Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 749 (Cal. 2015). Both procedural and substantive unconscionability must be present for a court to refuse to enforce a contract. *See Armendariz v. Found Health Psychcare Servs.*, 6 P.3d 669, 690 (Cal. 2000). In California, courts apply a sliding scale: "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*. However, courts cannot apply principles of unconscionability in a way that undermines the FAA's objective "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344. Instead, courts should give "due regard to the federal policy in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, F.3d 1046, 1049 (9th Cir. 1996).

---

[1] *See* Doc. No. 9-2, Ex. A ("Mutual Arbitration Agreement") ("As to any Covered Claim, each party waives to the maximum extent permitted by law the right to jury trial and to bench trial, and the right to bring, maintain or participate in any class, collective, or representative proceeding, including but not limited to under the PAGA or any other applicable law.").

With respect to procedural unconscionability, Plaintiff contends that: (a) she was given a contract of adhesion; (b) she does not read, speak, or understand English; and (c) she was never given a copy of AAA Arbitration rules. The Court addresses these arguments in turn.

The procedural unconscionability analysis focuses on the circumstances surrounding the creation of a contract, and the presence of "oppression or surprise." *Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344, 352 (Cal. Ct. App. 2007) (citations omitted). Oppression results from "an inequality in bargaining power that results in no real negotiation and an absence of meaningful choice." *Id.* (citing *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 381 (Cal. Ct. App. 2001)). Whereas surprise arises when the "agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (citing *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 145 (Cal. Ct. App. 1997).

> *a. The Adhesion Contract, by itself, is Insufficient to Show Procedural Unconscionability*

Plaintiff argues that the Arbitration Agreement is adhesive, deeming it procedurally unconscionable. *See* Doc. No. 12 at 5-6. Defendant contends that there is no evidence the Agreement was provided on a take-it-or-leave it basis, and even if it was, it does not render the Arbitration Agreement unconscionable. *See* Doc. No. 13 at 6.

An "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 6 P.3d at 689. A contract of adhesion is a "standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Flores*, 113 Cal. Rptr. 2d at 381. When a party in a weaker bargaining position is given a standardized agreement and "told to take it or leave it without the opportunity for meaningful negotiation, oppression, and therefore procedural unonscionability, are present." *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 867 (Cal. Ct. App. 2002) (internal quotations omitted). A higher degree of scrutiny is reserved for contracts of adhesion that also show signs of "sharp practices" such as lying,

duress or other manipulation.  *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016).  However, "[i]n the employment context, if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high."  *Poublon*, 846 F.3d 1251, 1261 (9th Cir. 2017) (internal quotations and citation omitted).

The Court finds that the Arbitration Agreement is a contract of adhesion.  There was a significant imbalance in bargaining power between Plaintiff and Defendant as ABM is a large limited liability company with locations throughout the nation.  *See* Compl. at 2.  The Arbitration Agreement was imposed and drafted by ABM, did not contain an opt-out provision, and Plaintiff signed it on the day she was hired.  *See* Doc. No. 9-2, Ex. A.  Thus, based on the standardized, take-it-or-leave it nature of the agreement, the Court finds that the agreement is a contact of adhesion.  The Court therefore finds that Plaintiff has established some degree of procedural unconscionability.  However, to discern the degree of procedural unconscionability, the Court must also analyze other circumstances of the Arbitration Agreement.  *See Poublon*, 846 F.3d at 1261 ("the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable" (internal citations and quotations omitted)).

> *b. Plaintiff's Alleged Inability to Comprehend English does not Render the Arbitration Agreement Unconscionable*

Plaintiff next argues that the Arbitration Agreement was procedurally unconscionable because she "does not speak, understand, read or write in English."  Doc. No. 12 at 4.  Defendant contends that Plaintiff cannot escape liability of the agreement she signed on the ground that she did not read it.  *See* Doc. No. 13 at 7.

Here, the Court finds that the Arbitration Agreement is not procedurally unconscionable based upon Plaintiff's purported inability to comprehend English.  Plaintiff relies on *Perez v. Maid Brigade* to argue that because the Arbitration Agreement was only provided to Plaintiff in English, and Plaintiff only understands Spanish, the

Agreement was unconscionable. No. C 07-3473 SI, 2007 WL 2990368 (N.D. Cal. Oct. 11, 2007). Although the Plaintiff in *Perez* had similar employment and did not speak English, the Court finds this argument unpersuasive. *Id*. at *1. The Arbitration Agreement in *Perez* is distinguishable from the Arbitration Agreement between Plaintiff and Defendant because the agreement in *Perez* was on page sixty of a substantial employment packet, and the Arbitration Agreement only was binding on the employee. *Id*. at *6. Based upon the agreement being "one-sided and imposed by a strong employer on a weak employee," the Court held the agreement unconscionable. *Id*. By contrast, here, the Arbitration Agreement was a separate, three-page document and was binding on both the employer and employee.

Plaintiff also relies on *Samaniego v. Empire Today LLC* to argue the Arbitration Agreement was unconscionable. 205 Cal. App. 4th 1138 (2012); *see also* Doc. No. 12 at 5-6. The Court finds this case distinguishable as well. The plaintiffs in *Samaniego* asked, and were denied access to a Spanish version of the agreement. *Samaniego*, 205 Cal. App. 4th at 1145. Further, the agreement in *Samaniego* was not flagged by individual headings, nor did it require the plaintiff's initials. *Id*. at 1145-46. Here, Plaintiff does not claim that she requested a Spanish version of the Agreement. Moreover, the Agreement required her to initial on each page, and was separate from her employment packet. Thus, neither *Perez* nor *Samaniego* are entirely on point.

The Court finds the circumstances surrounding Plaintiff's claims are most analogous to those in *Brookwood v. Bank of America*, 45 Cal. App. 4th 1167 (1996). In *Brookwood*, the plaintiff, an employee of Bank of America, argued an arbitration agreement was unconscionable because she did not understand what it meant. *Id*. at 1673. However, the court in *Brookwood* rejected the plaintiff's argument, indicating "[r]eliance on an alleged misrepresentation is not reasonable when [a] plaintiff could have ascertained the truth through the exercise of reasonable diligence. Reasonable diligence requires the reading of a contract before signing it. A party cannot use his own lack of diligence to avoid an arbitration agreement." *Id*. at 1674. Here, if Plaintiff did

not understand and could not read the language of the Arbitration Agreement, she could have requested a Spanish version or asked for a translation.[2] Plaintiff failed to do so. Plaintiff's lack of diligence cannot now be used to avoid arbitration. *See Brookwood*, 45 Cal. App. 4th at 1674 ("Reasonable diligence requires the reading of a contract before signing it.").

     *c. Failure to Attach the AAA Arbitration Rules to the Agreement does not Render it Unconscionable*

  Plaintiff further argues that because she was never given a copy of the AAA arbitration rules upon executing the agreement, the Arbitration Agreement is procedurally unconscionable. *See* Doc. No. 12 at 6. Plaintiff contends that "numerous cases have held that the failure to provide a copy of the arbitration rules" support a finding of unconscionablity. *Id.* Defendant argues that although it did not hand Plaintiff a copy of the rules, the Agreement advised Plaintiff of three ways to access the rules. *See* Doc. No. 13 at 9.

  Plaintiff does not assert that the AAA rules would result in unfair arbitration. *See Baltazar*, 62 Cal. 4th at 1246 ("[Plaintiff's] argument [that rules were not attached] might have had force if her unconscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the agreement."); *see also Peng*, 219 Cal. App. 4th at 1472 (holding when a plaintiff does not identify any feature of the AAA rules that prevent fair and full arbitration, failure to attach the rules is insufficient to show procedural unconscionability). Instead, Plaintiff relies solely on the fact that the rules were not physically attached to argue unconscionability. *See* Doc. No. 12 at 6. Although the AAA rules were not attached to the agreement, the Agreement provides Plaintiff with information to access a copy of the rules through the ABM legal department, by phone, or through the internet, suggesting Defendant was not trying to

---

[2] The Court notes all of Plaintiff's employment documents were provided to her in English, and were fully and accurately filled out by Plaintiff. *See* Doc. No. 13-1, Ex. A-D.

hide the AAA rules from Plaintiff. *See* Doc. No. 9-2, Ex. A at 1. Standing alone, the failure to attach the AAA rules is insufficient to show unconscionability. *See Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1131 (C.D. Cal. 2006) ("while it may have been unfair to have [Plaintiff] sign an agreement referencing rules which were not attached at the time, it would only render the agreement unenforceable if those rules were substantively unconscionable"). Thus, the Court finds that although failing to physically attach the AAA rules may have been inconvenient to Plaintiff, it is inadequate to show the Arbitration Agreement is unconscionable.

In sum, despite the adhesive nature of the employment contract, the Court finds that Plaintiff fails to show that the agreement is substantively unconscionable.[3] Thus, the Arbitration Agreement is not unconscionable.

### 3. The Arbitration Agreement Allows for Adequate Discovery

Plaintiff further contends that the Arbitration Agreement does not allow for adequate discovery, and is inconsistent with state and federal law. *See* Doc. No. 12 at 7-8. Defendant argues the AAA rules which govern the Arbitration Agreement have consistently been held to permit the parties in engage in adequate discovery. *See* Doc. No. 13 at 14-15. The Court agrees. It has been frequently held that the AAA rules allow for sufficient discovery under both California and federal standards. *See Roman*, 172 Cal. App. 4th at 1475-76 ("[t]here appears to be no meaningful difference between the scope of discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules"); *see also Lucas v. Gund*, 450 F. Supp. 2d at 1133 ("The [AAA] rules do not limit discovery other than to provide that only 'necessary' discovery shall be

---

[3] The Court need not address Plaintiff's argument that the Arbitration Agreement is substantively unconscionable due to the Agreement containing a PAGA waiver because Plaintiff does not allege a PAGA claim. Further, a PAGA waiver is consistent with the purpose of the FAA, "requiring the availability of class wide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, 563 U.S. at 344; *see also Poublon*, 846 F.3d at 1264 (holding the unenforceability of the waiver of a PAGA representative action does not make an arbitration agreement substantively unconscionable).

conducted, but this is the same standard as applies in court: parties at trial cannot engage in unfettered discovery.") (citing Fed. R. Civ. P. 26(b)(2)).  As such, the Court will enforce the parties' valid agreement and compel Plaintiff to arbitrate her claims against Defendant.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion to compel arbitration and **STAYS** this action pending completion of arbitration.  *See* 9 U.S.C. § 3.  The parties are directed to file a notice with the Court regarding the outcome of the arbitration proceedings within fourteen (14) calendar days of the issuance of the arbitrator's decision.

**IT IS SO ORDERED**.

DATE: July 31, 2018

HON. MICHAEL M. ANELLO
United States District Judge